**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH VICTOR JOHNSON,<br><br>                          Plaintiff,<br>   vs.<br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>                          Defendant. | CASE NO. 12cv1877-WQH-DHB<br><br>ORDER |

HAYES, Judge:

    The matter before the Court is the review of the Report and Recommendation (ECF No. 18) issued by United States Magistrate Judge David H. Bartick, recommending that Plaintiff's Motion for Summary Judgment (ECF No. 12) be denied and Defendant's Cross-Motion for Summary Judgment (ECF No. 16) be granted.

## BACKGROUND

**I. Plaintiff's Previous Federal Action**

    On July 3, 2007, Plaintiff filed an initial application for Supplemental Security Income, alleging a disability beginning on April 1, 2003. (Administrative Record ("AR") at 94). Plaintiff alleged that he was unable to work due to hepatitis C, carpal tunnel syndrome, tendinitis in both hands, depression, asthma and high blood pressure. *Id.* at 78. Plaintiff's application was denied initially on November 28, 2007, *id.* at 78-81, and on reconsideration on March 3, 2008. *Id.* at 83-87. On May 2, 2008, Plaintiff

filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 89-90.

On March 17, 2009, Plaintiff testified at an administrative hearing before ALJ Mark Ramsey. *Id.* at 41-72. On April 22, 2009, ALJ Ramsey denied Plaintiff benefits after finding that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 6-26. On May 22, 2009, the Appeals Council adopted ALJ Ramsey's findings, and the Commissioner's decision became the final decision of the Social Security Administration. *Id.* at 1-3. Thereafter, Plaintiff sought judicial review of the Commissioner's decision in United States District Court for the Eastern District of California.

On September 16, 2010, the district court granted Plaintiff's motion for summary judgment and denied the Commissioner's cross-motion for summary judgment. *Id.* at 415-21. The district court concluded that ALJ Ramsey "directly violated a holding of the Ninth Circuit in not performing a credibility analysis with respect to a lay witness, and also erred in not assigning any limitations to plaintiff's residual functional capacity based on right hand carpal tunnel syndrome." *Id.* at 415-16. The district court remanded the case to the Appeals Council for further administrative proceedings. *Id.*

**II.    Findings of the ALJ on Remand**

On November 6, 2010, the Appeals Council remanded Plaintiff's claim to an ALJ for further administrative proceedings. *Id.* at 423-24.

On January 20, 2012, Plaintiff testified at an administrative hearing before ALJ Carol Buck (hereinafter "ALJ"). *Id.* at 374-414. On June 4, 2012, the ALJ issued a written decision denying Plaintiff's application for benefits. *Id.* at 352-72. The ALJ reviewed the evidence in the record, and concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from June 7, 2007 through the date of her decision. *Id.* at 365.

At step one of the sequential evaluation process, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since June 7, 2007, the date of Plaintiff's

1  application. *Id.* at 357. At step two, the ALJ concluded that Plaintiff has the following
2  severe impairments: "[B]ilateral carpal tunnel syndrome status-post release surgery on
3  left wrist and two release surgeries on right carpal tunnel; hepatitis C status-post
4  pegylated interferon/ribavirin treatments; post traumatic stress disorder; bipolar
5  disorder; psychotic disorder with anti-social personality traits; alcohol abuse in early
6  remission and mild degenerative cervical disk disease." *Id.* At step three, the ALJ
7  concluded that Plaintiff does not have an impairment or combination of impairments
8  that meet or exceed the impairments contained in the Listing of Impairments
9  ("Listings"). *Id.*

10  Before proceeding to step four, the ALJ: (1) found the statements of Plaintiff and
11  Plaintiff's uncle-in-law regarding Plaintiff's physical and mental symptoms not credible
12  and inconsistent with medical records, *id.*; (2) credited the opinion of Plaintiff's treating
13  physician's-assistant, Jennifer Inglet, who stated that Plaintiff is capable of
14  lifting/carrying no more than 10 pounds frequently and 25 pounds occassionally, has
15  some limitations in his ability to use his upper extremities, and has no limitations in his
16  ability to stand, walk or sit, despite several impairments of degenerative cervical disk
17  disease, *id.* at 361; (3) concluded that Plaintiff's mental condition was stable when
18  Plaintiff took his prescribed medications and attended his therapy sessions, but that
19  Plaintiff's condition worsened when he was not compliant with his medications and
20  therapy, *id.* at 363; (4) did not credit the January 2008 and March 2009 opinions of
21  Plaintiff's treating psychiatrist, Dr. Heitzman (who stated that Plaintiff was permanently
22  incapacitated from working due to his bipolar disorder), because Dr. Heitzman's
23  opinion was based solely upon Plaintiff's subjective complaints, and lacked objective
24  support in Plaintiff's treatment records, *id.* at 363-364; (5) did not fully credit the
25  January 2012 opinion of Plaintiff's treating psychiatrist, Dr. Papp (who stated that
26  Plaintiff had no useful ability to sustain any type of work-related mental activities),
27  because Dr. Papp's opinion was based solely upon Plaintiff's subjective complaints, *id.*
28  at 364; and (6) credited the opinion of Dr. Tyl, the state agency medical consultant, who

1  stated that Plaintiff has the residual functional capacity ("RFC") "to sustain the
2  concentration, persistence and/or pace to complete 1 and 2 step simple tasks which
3  require only limited contact with others." *Id.* 364.

4       At step four of the sequential evaluation process, the ALJ credited the vocational
5  expert's testimony and concluded that Plaintiff is unable to perform his past relevant
6  work. *Id.* at 364. At step five, the ALJ found that, based on the testimony of the
7  vocational expert, a significant number of jobs exist in the national economy that
8  Plaintiff can perform, including jobs such as a fruit distributor and conveyor line bakery
9  worker. *Id.* at 365. The ALJ concluded that Plaintiff was not "disabled" within the
10 meaning of the Social Security Act. *Id.*

11 **III.   Plaintiff's Action in this Court**

12      On July 31, 2012, Plaintiff filed a Complaint in this Court pursuant to section
13 405(g) of the Social Security Act, seeking judicial review of the final decision of the
14 Commissioner of the Social Security Administration ("Commissioner" or "Defendant")
15 to deny Plaintiff's claim for disability benefits. (ECF No. 1.)

16      On October 17, 2012, Defendant filed an Answer (ECF No. 8) and lodged the
17 Administrative Record.  (ECF No. 9.)

18      On November 28, 2012, Plaintiff filed the Motion for Summary Judgment,
19 contending that the decision of the ALJ should be reversed and the case remanded for
20 an award of benefits or further proceedings.  (ECF No. 12). Plaintiff contends: (1) the
21 ALJ erred by failing to make step two and step three findings regarding Plaintiff's
22 depression; (2) the ALJ erred by failing to properly resolve conflicts between the
23 opinions of Plaintiff's treating and consulting psychiatrists and by failing to set forth
24 specific, legitimate reasons for rejecting the opinions of the treating psychiatrists; (3)
25 the ALJ erred by failing to set forth clear and convincing reasons for discrediting
26 Plaintiff's subjective allegations of his mental complaints and limitations; (4)
27 substantial evidence does not support the ALJ's findings that Plaintiff had the RFC to
28 perform a limited range of light work; and (5) the testimony by the vocational expert

should be found not to constitute substantial evidence that Plaintiff had the RFC to perform the unskilled jobs described by the vocational expert. (ECF No. 12-1 at 2-3).

On December 31, 2013, Defendant filed an Amended Cross-Motion for Summary Judgment ("Cross-Motion for Summary Judgment") and opposition. (ECF No. 16). On January 11, 2013, Plaintiff filed a reply. (ECF No. 17).

On July 16, 2013, the Magistrate Judge issued the Report and Recommendation. (ECF No. 18). The Magistrate Judge reviewed the medical evidence, administrative hearing testimony and the written decision of the ALJ. The Magistrate Judge recommended that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment.

On July 30, 2013, Plaintiff filed Objections to the Report and Recommendation. (ECF No. 19).

## STANDARDS OF REVIEW

*District Court Review of a Report and Recommendation*

The duties of the district court in connection with a report and recommendation of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district court must "make a de novo determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b).

*Review of Denial of a Disability Claim*

When an applicant's claim for disability benefits under the Social Security Act has been denied, she may seek judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g). Where, as in this case, "the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. § 404.981). A reviewing court will reverse the ALJ's decision only if "it is based upon legal error or is not supported by substantial

evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is "more than a mere scintilla but less than a preponderance." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citation omitted). "If the record would support more than one rational interpretation, we defer to the ALJ's decision." *Bayliss*, 427 F.3d at 1214 n.1 (citation omitted).

## DISCUSSION

The Magistrate Judge recommended that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment on the following grounds: (1) "substantial evidence supports the ALJ's conclusion that Plaintiff's depression is not severe," and even if the ALJ did err by not finding Plaintiff's depression severe, "that error was harmless because the medical evidence does not support Plaintiff's contention that his depression satisfies the criteria for meeting the Listings for mental disorders" (ECF No. 18 at 22); (2) the ALJ's decision to reject the opinions of Plaintiff's treating psychiatrists, Dr. Heitzman and Dr. Papp, "was accompanied by specific, legitimate reasons," and complied with "the regulations setting forth how to treat medical opinions," because "the ALJ provided a lengthy discussion of her conclusion that Plaintiff's subjective complaints, and those of Plaintiff's relatives, were inconsistent with the medical records and not credible," *id.* at 27; (3) the ALJ "set forth 'findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit'" the testimony of Plaintiff, *id.* at 31-32 (quoting *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)); (4) "the ALJ did not err[] by failing to consider Plaintiff's depressive disorder when assessing his [('RFC')]," and the "ALJ's RFC determination is supported by substantial evidence," *id.* at 34-35; and (5) "substantial evidence supports the decision of the ALJ to not include [certain] discredited limitations when presenting [a] hypothetical question to the vocational expert," and the testimony of the vocational expert revealed no conflict with the Dictionary of Occupational Titles ("DOT"). *Id.* at 36.

Plaintiff objects to the Magistrate Judge's recommendations as to: (1) the ALJ's decision to reject opinions of Plaintiff's treating psychiatrists, Dr. Heitzman and Dr. Papp; (2) the ALJ's findings as to the severity of Plaintiff's depression and Plaintiff's RFC; and (3) the limitations included in the ALJ's hypothetical question to the vocational expert.

**I.  Plaintiff's objections regarding the ALJ's decision to reject the opinions of Plaintiff's treating psychiatrists, Dr. Heitzman and Dr. Papp**

The Magistrate Judge found that "the ALJ's decision to not fully credit the opinions of [treating] Dr. Heitzman and Dr. Papp was accompanied by specific, legitimate reasons for doing so. Specifically, the ALJ provided a lengthy discussion of her conclusion that Plaintiff's subjective complaints [provided to Dr. Heitzman and Dr. Papp], and those of Plaintiff's relatives, were inconsistent with the medical records and not credible." (ECF No. 18 at 28 (citing AR at 362-363). The Magistrate Judge concluded that "the ALJ complied with the regulations setting forth how to treat medical opinions." *Id.* (citing 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinions.")).

With respect to this portion of the Report and Recommendation, Plaintiff raises the following objections:

> The [Magistrate Judge] found on pages 27 and 28 of his Report and Recommendation that the ALJ set forth specific, legitimate reasons for discrediting the opinions of Dr. Heitzman and Dr. Papp, plaintiff's treating psychiatrists, on the grounds that plaintiff's subjective complaints and statements by his relatives were inconsistent with the medical records and were not credible, as shown by him not being entirely truthful about his drug and alcohol use (Tr. 363). The [Magistrate Judge] specifically stated that Dr. Heitzman's opinion was not credible because it was not supported by the record and was based on plaintiff's discredited testimony, and he failed to cite specific, objective findings.
>
> However, the record shows that plaintiff testified truthfully that he had stopped using drugs in 2007 and he last used alcohol at his wedding in 2011, which is supported by the treatment records (Tr. 382, 384). Plaintiff contends again that contrary to the ALJ's and the [Magistrate Judge's] statement that plaintiff had minimal mental impairment symptoms and was stable when he was medication compliant (Tr. 363), treatment records show that he had signs of severe depression and other mental impairments during times when he was taking medication (Tr. 302,

633, 636-638, 648, 764-765, 822, 880, 887, 948, 1012). The medical evidence of record also shows that plaintiff was repeatedly observed to have severe agitation that resulted in anger outbursts from 2009 (Tr. 700-701, 300) that supported Dr. Heitzman's 3-9-09 opinion and assessment (Tr. 349-350) and continuing through 2011 (Tr. 876, 822, 869), which ultimately resulted in his stabbing someone in September of 2010 and subsequent incarceration (Tr. 998). Plaintiff contends that the psychiatric treatment records and the opinion of Dr. Heitzman are consistent with Dr. Papp's opinion that '(Plaintiff) experiences intense emotional outbursts which would make it difficult for him to maintain employment ... His behavior is unreliable and unpredictable....' (Tr. 1032).

Plaintiff contends again that the Administrative Law Judge erred in evaluating the opinions of his treating psychiatrists by failing to consider all of the extensive material evidence of the observations and mental status examination findings of his severe emotional agitation, irritability, hostility and outbursts, and violent conflict with other people throughout his life that led to multiple incarcerations (20 Code of Federal Regulations section 416.920(c)). Plaintiff contends again that the ALJ erred in discrediting and giving little to the opinion of Dr. Heitzman because he had more evidence over a longer period of time from 2007 through 2011 upon which to make a more reliable assessment of the severity of his mental impairment and associated limitations than did the non-examining consultant upon which the ALJ relied (20 Code of Federal Regulations section 416.927(d)(3); Social Security Ruling 96-3p). *Orn v. Astrue*, 495 F.3d 625, 631-632 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1996).

Plaintiff contends again regarding the alleged lack of credibility of his allegations of having severe depression and post-traumatic stress from childhood abuse that resulted in interpersonal conflict and incarcerations during his life (Tr. 296-297, 305, 398-399, 821-824, 851, 839-840) that was supported by statements from his sister-in-law (Tr. 362, 127-134, 551), the ALJ should be found to have erred by disregarding the numerous clinical signs in the treatment records of his agitation, irritability and anger in 2008 and 2009 (Tr. 298, 657-658, 700-701, 709, 764-765) and in 2010 and 2011 (Tr. 822-823, 869, 876, 880, 1012) because the Court of Appeals for the Ninth Circuit has held that 'The (Commissioner) cannot insulate ultimate conclusions regarding disability by turning them into questions of 'credibility.' *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir. 1995). Plaintiff also contends that while the ALJ found that he credibly had severe mental impairments of '... post-traumatic stress disorder and bipolar disorder with antipersonality disorder traits' (Tr. 434), which were inconsistent with the State Agency non-examining physician's finding that he had only an 'affective disorder' (Tr. 213,) that this Court found not to be error, the ALJ should be found to have erred by failing to set forth specific, germane reasons for discrediting his allegations of having interpersonal conflicts due to irritability and anger outbursts that resulted in incarcerations for assault during his life up to and including the stabbing of an individual in September of 2010 (Tr. 398-399) because the Court of Appeals for the Ninth Circuit has held that 'General findings are insufficient; rather, the ALJ must specify what testimony is not credible and what evidence undermines the claimant's complaints.' *Lester*, 81 F.3d at 830 (9th Cir. 1996). Plaintiff contends that in the absence of affirmative evidence of malingering the ALJ should be found to have erred by failing to set forth clear and convincing reasons for discrediting his subjective

complaints and alleged limitations. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

(ECF No. 19 at 1-4).

The ALJ's rejection of the opinions of Drs. Heitzman and Papp was largely based on the ALJ's findings that Plaintiff was not credible and that Drs. Heitzman and Papp relied solely on Plaintiff's statements in forming their opinions. Accordingly, the Court will discuss (1) the ALJ's decision with respect to Plaintiff's credibility, followed by (2) the ALJ's decision to reject the opinions of Drs. Heitzman and Papp.

### A. Credibility of Plaintiff

In evaluating the credibility of a claimant's testimony regarding subjective symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal citations and quotation marks omitted). "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1284).

The ALJ considered Plaintiff's testimony "that he freaks out when people are around him," that he "was fired from just about every job he has ever had because he

got into fights with supervisors and other employees," and that "his ability to perform work-related mental activities, such as responding appropriately to co-workers, supervisors or the public, as well as maintaining his concentration, persistence or pace are all significantly restricted due to the severity of his symptoms." (AR at 362). The ALJ considered statements from Plaintiff's uncle and sister-in-law regarding Plaintiff's difficulties interacting with other people in public. *Id.* (citing AR at 127-134, 551). Although the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ stated that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The Magistrate Judge correctly stated that "the ALJ found Plaintiff met the first step of the test," and "the issue [at step two] is whether [the ALJ] provided 'specific, clear and convincing reasons' for her adverse credibility finding." (ECF No. 18 at 30 (quoting *Vasquez*, 572 F.3d at 591)). The ALJ found that Plaintiff's "veracity is called into question in regards to his allegations about the severity of his symptoms, his functional limitations and his use of both drugs and alcohol." (AR at 363). The ALJ stated that Plaintiff was diagnosed with bi-polar disorder and post-traumatic stress disorder in December 2007, "based solely" on his own "recount of his personal and medical history" to his physician. *Id.* The ALJ found:

> [T]he record shows no evidence of [Plaintiff] seeking and/or receiving mental health treatment prior to December of 2007, even though he alleges being abused throughout his childhood by his parents and relatives and that he has suffered from severe mental impairments since then. Additionally, the record shows that his symptoms are stable and under control when he is compliant in taking the medications prescribed by his psychiatrist and attends his scheduled therapy sessions with a mental health social worker.... However, when [Plaintiff] i[s] non-complaint with taking his medications and/or going to his therapy sessions, the record shows his symptoms worsen and lead to his being suicidal and having to seek emergency medical treatment and being involuntarily committed for in-patient psychiatric treatment. This occurred three times in 2009 when the [Plaintiff] was not compliant with his mental health treatment and became suicidal and was involuntarily committed. Once he was stabilized and taking the medications his psychiatrist prescribed, [Plaintiff]'s symptoms lessened significantly and his ability to function increased significantly which is highlighted by the fact that upon discharge from a psychiatric facility in May of 2009, [Plaintiff] was assessed with having

> a GAF of 68, which showed a significant increase in his functionality from when he was involuntarily committed to the facility.

*Id.* The ALJ found that "[t]he record shows [Plaintiff] has never been entirely forthright when he has been asked about his alcohol and/or drug use by a treating psychiatrist and/or mental health worker." *Id.*

The Court has reviewed the Administrative Record and the submissions of the parties. The Magistrate Judge correctly found that the ALJ mistakenly stated that Plaintiff denied using drugs during his treatment in March 2009. (ECF No 18 at 31). The Magistrate Judge stated: "Notwithstanding this inconsistency in the ALJ's findings, the record does support the ALJ's conclusion that Plaintiff has not been entirely truthful concerning his drug use." (ECF No. 18 at 31). The Magistrate Judge correctly stated:

> In October 2011, Plaintiff reported to Dr. Papp that he last used illegal drugs in 2006. (AR 993). Additionally, Plaintiff testified at the hearing before ALJ Buck that he last used illegal drugs in 2007. (AR 383). Neither of these statements were truthful given Plaintiff's admission of regular marijuana use and positive drug test in March 2009 (AR 747), or a separate test in August 2009 in which Plaintiff tested positive for cannabinoids. Thus, the ALJ was permitted to draw the conclusion that Plaintiff's representations concerning his drug abuse was not entirely truthful and discredited his entire testimony.

*Id.* Because the ALJ found Plaintiff not credible for several reasons supported by the record, the ALJ was free to discount Plaintiff's subjective statements, even though some of Plaintiff's statements may have been supported by other evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *see also Batson*, 359 F.3d at 1197. The Magistrate Judge correctly concluded that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's subjective statements regarding the severity of his symptoms. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [A court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *see also Verduzco v. Apfel*, 188 F.3d, 1087, 1090 (9th Cir.1999) (relying on inconsistent statements about alcohol use to reject claimant's testimony); *Thomas*, 278 F.3d at 958-59 ("The ALJ gave specific, clear and convincing reasons for discounting Ms.

Thomas' testimony. In addition to finding no objective medical evidence to support Ms. Thomas' descriptions of her pain and limitations, the ALJ found that Ms. Thomas had an 'extremely poor work history' and 'has shown little propensity to work in her lifetime,' which negatively affected her credibility regarding her inability to work.... The ALJ found that Ms. Thomas had not 'been a reliable historian, presenting conflicting information about her drug and alcohol usage.'... The ALJ inferred 'that this lack of candor carries over to her description of physical pain.' This substantial evidence in the record supports the ALJ's negative conclusions about Ms. Thomas' veracity.").

### B. Opinions of Treating Physicians, Drs. Heitzman and Papp

In January 2008 Dr. Heitzman completed a "medical source statement," finding that Plaintiff was permanently incapacitated from working full time due to a bipolar disorder and post-traumatic stress disorder. (AR at 351). On March 9, 2009, Dr. Heitzman issued a subsequent medical source statement on March 9, 2009, opining that Plaintiff lacks the ability to sustain the mental demands of even simple, unskilled work. *Id.* at 349-50. On January 5, 2012, Dr. Papp issued a "medical source statement," opining that Plaintiff lacks the ability to sustain any type of work-related mental activities. *Id.* at 1031-32.

The ALJ did not fully credit the opinions of treating Drs. Heitzman and Papp that Plaintiff is permanently incapacitated and unable to work altogether, and instead adopted the contradictory opinion of non-treating Dr. Tyl that Plaintiff "appears able to sustain [concentration, persistence and pace] for and adapt to 1-2 step tasks with limited contact with others." *Id.* at 223; *see also id.* at 364.

The opinion of a treating physician generally should be given more weight than opinions of doctors who do not treat the claimant. *See Turner v. Comm'r. of Soc. Sec.*, 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing *Lester*, 81 F.3d at 830-31). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.*

(citing *Lester*, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating physician's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Id.* (citing *Lester*, 81 F.3d at 830-31). This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors, are correct." *Orn*, 495 F.3d at 632 (quotation omitted). A non-examining doctor's opinion, without additional supporting evidence from the record, does not constitute substantial evidence with which to reject a treating doctor's opinion. *Lester*, 81 F.3d at 831-32.

The opinions of Plaintiff's treating physicians, Drs. Heitzman and Papp, were contradicted in the record by those of Dr. Tyl, a non-treating physician. Accordingly, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for not giving controlling weight to the opinions of Drs. Heitzman and Papp. *See Turner,* 613 F.3d at 1222; 20 CFR § 404.1527(d)(1) (2010).

"For the same reasons the [ALJ was] unable to fully credit the allegations of the claimant, his uncle and his sister-in-law," discussed above, the ALJ stated that she was "also unable to fully credit medical source statements issued by [Dr. Heitzman and Dr. Papp]" stating that Plaintiff is unable to work. (AR at 363 (citing AR at 349-51; 1031-32)). The ALJ stated that she "was unable to credit the[] opinions [of Dr. Heitzman], as [Dr. Heitzman] cited no specific, objective findings from the [Plaintiff's] treatment records which would support this level of restriction in his ability to function mentally." *Id.* The ALJ stated that she "is unable to fully credit" the medical source statement of Dr. Papp, which was "based solely on [Plaintiff's] subjective complaints and/or allegations, which included a statement that the claimant's history of substance abuse

amounted to only the usual 'whoopings.'" *Id.* at 364. The ALJ also rejected the August 21, 2007 opinion of an examining psychiatrist who found that, "aside from mild difficulty performing detailed and complex tasks, [Plaintiff] had no limitations performing work-related mental activities." *Id.* The ALJ ultimately credited the opinion of a state agency medical consultant, Dr. Tyl. The ALJ found Dr. Tyl's September 24, 2007 medical source statement to be "indicative of the claimant's ability to sustain work-related mental activities." *Id.*

The Court has reviewed the Administrative Record and the submissions of the parties. The Magistrate Judge correctly found that "the ALJ provided a lengthy discussion of her conclusion that Plaintiff's subjective complaints, and those of Plaintiff's relatives, were inconsistent with the medical records and not credible." (ECF No. 18 at 27). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [A court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40 (citation omitted). The Magistrate Judge correctly concluded that the ALJ articulated specific and legitimate reasons, based upon substantial evidence, for not giving controlling weight to the opinions of Drs. Heitzman and Papp regarding Plaintiff's symptoms.

With respect to the ALJ's decision to reject the opinions of Plaintiff's treating psychiatrists, the Report and Recommendation is adopted.

**II. Plaintiff's objections regarding the ALJ's findings on the severity of Plaintiff's depression and Plaintiff's RFC, and Plaintiff's objections regarding the limitations included in the ALJ's hypothetical question to the vocational expert**

On September 24, 2007, Dr. Tyl, a state non-examining psychiatrist, completed a Psychiatric Review Technique form indicating that Plaintiff had an affective disorder of depression requiring an RFC assessment. (AR at 213, 216). Dr. Tyl found that Plaintiff had moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. *Id.* at 221.

Dr. Tyl also completed a Mental Residual Functional Capacity Assessment. *Id.* at 224-26. Dr. Tyl found that Plaintiff had no significant limitations on his ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; maintain attention and concentration for extended periods; make simple work-related decisions; or ask simple questions or request assistance. *Id.* at 224-25. Dr. Tyl found that Plaintiff had moderate limitations on his ability to understand, remember and carry out detailed instructions; perform activities within a schedule, maintain regular attendance and be punctual; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. *Id.*

The Magistrate Judge stated that the ALJ did not err in finding that "Plaintiff's mental limitations were consistent with Dr. Tyl's functional limitation findings." (ECF No. 18 at 35). The Magistrate Judge concluded that the ALJ's RFC determination is supported by substantial evidence. *Id.*

Plaintiff raises the following objections to the Magistrate Judge's recommendation:

> Plaintiff first contends that while this Court's finding on page 24 that the ALJ's alleged error to make a specific finding whether his medically determinable impairment of depression was 'severe' at step 2 in combination with his other mental impairments in the sequential evaluation of disability was 'harmless error' because it was 'inconsequential to the ultimate nondisability determination' at step 3 that

also requires at least two 'marked' limitations under the 'B' criteria, this alleged error was significant at steps 4 and 5 in the sequential evaluation of disability and should be found to be grounds for remand because Dr. Tyl found that plaintiff's Affective Disorder resulted in numerous 'moderate' limitations in her Medical Assessment of Ability to Perform Work-Related Activities evaluation (Tr. 224-225), including the abilities to interact appropriately with co-workers, supervisors and the public, and to complete a normal workday and workweek without interruption from his psychological symptoms (Tr. 224-225). *Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001); *Smolen*, 80 F.3d at 1290-1291....

The Regulations require that even impairments that are not 'severe' at step 2 in evaluation of disability must be considered in the remaining steps of the sequential evaluation of disability (20 Code of Federal Regulations section 416.945(e). The Regulations state that 'basic work activities' in regards to mental impairment includes in pertinent part the capacities for 'Responding appropriately to supervision, co-workers and usual work situations' (20 Code of Federal Regulations sections 416.921(b), 416.967(b)). Social Security Ruling 96-8p states that a residual functional capacity finding requires function-by-function analysis.

Plaintiff contends again that the ALJ erred at steps 4 and 5 of the sequential evaluation of disability because it is undisputed that the ALJ found, based on Dr. Tyl's determination of functional limitations, that he had a 'moderate' limitation in regards to his ability to interact appropriately with the public (Tr. 224-225), that restricted him to performing '... the mental demands of simple, uncomplicated jobs which require no more than occasional contact with the public' (Tr. 358), but the ALJ made no findings regarding Dr. Tyl's additional determinations of limitations that allegedly limited his abilities to perform mental 'basic work activities.' Plaintiff contends again that since the ALJ found that based Dr. Tyl's determinations that he had 'moderate' mental functional limitations that restricted him to simple jobs with only occasional contact with the public, then based on the rest of Dr. Tyl's determinations that he had additional 'moderate' limitations that allegedly further restricted his residual functional capacity to perform light work, the ALJ should be found to have erred by failing to make specific findings regarding the following limitations without explanation: 'The ability to perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (and) the ability to respond appropriately to changes in the work setting' (Tr. 224-225) (Social Security Rulings 85-15 and 96-8p). Plaintiff contends that substantial evidence does not support the ALJ's finding that he had the residual [functional capacity] to perform light work and that mentally he was only limited to simple jobs with occasional contact with the public (Tr. 358) because the Regulations and Social Security Rulings require that an individual also must have the capacity to respond appropriately to co-workers, supervisors and changes in routine work settings (20 Code of

> Federal Regulations section 416.921(b); 416.967(b); Social Security Ruling 85-15).

(ECF No. 19 at 4-5). Plaintiff further objects to the Report and Recommendation on the following grounds:

> Plaintiff similarly contends again that the ALJ should be found to have erred by failing to question the vocational expert to what degree the DOT descriptions of the jobs of fruit distributor and bakery worker demand that a worker be in contact and coordinate job duties with co-workers and supervisors because the DOT descriptions in Footnote 9 show that these demands are required, and this information could change the outcome of the case in light of Dr. Tyl's credible determinations that he had additional limitations in regards to responding appropriately with co-workers and supervisors (Tr. 406-411, 224-225) (Social Security Ruling 00-4p). *Massachi*, 486 F.3d at 1153-1154.

*Id.* at 8-9.

The ALJ "credit[ed] and adopt[ed]" Dr. Tyl's opinion. (AR at 364). Because Dr. Tyl's opinion was credited without reservation, the Court finds that the ALJ erred by not addressing at steps two and three Dr. Tyl's opinion that Plaintiff had an affective disorder of depression requiring an RFC assessment. (AR at 213, 216). It is possible for an ALJ's error in failing to address an impairment at step two to be considered harmless when the ALJ adequately discusses the impairment at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In this case, the Court does not find that the error is harmless because the ALJ's discussion of Plaintiff's depression in step four did not include a discussion of Dr. Tyl's opinion that Plaintiff had an affective disorder of depression. *See* AR at 362-64. Accordingly, the Court remands this matter to the Commissioner for further proceedings.

At step four, the ALJ determined that Plaintiff's RFC was, *inter alia*, "that the claimant is capable of performing the mental demands of simple, uncomplicated jobs which require no more than occasional contact with the public." *Id.* at 358. Although the ALJ's RFC finding incorporated Dr. Tyl's opinion that Plaintiff was moderately limited in "[t]he ability to interact appropriately with the general public," the RFC does not incorporate Dr. Tyl's additional opinions that Plaintiff was moderately limited in "[t]he ability to accept instructions and respond appropriately to criticism from

1 supervisors," and "[t]he ability to get along with co-workers or peers without distracting
2 them or exhibiting behavioral extremes." *Id.* at 225. Because at step four the ALJ
3 "credit[ed] and adopt[ed]" Dr. Tyl's opinion without reservation, the Court finds that
4 the ALJ erred in not addressing Dr. Tyl's additional opinions when determining
5 Plaintiff's RFC. *Id.* at 364. Based upon the context of this case, the Court does not find
6 that the ALJ's error was harmless. The Court remands this matter to the Commissioner
7 for further proceedings.

8 Similarly, the ALJ erred in failing to address Dr. Tyl's additional opinions
9 (regarding Plaintiff's limitations in accepting instructions and getting along with co-
10 workers) when asking the vocational expert hypothetical questions and when making
11 the step five determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th
12 Cir. 2006) ("[A]n ALJ is not free to disregard properly supported limitations. The
13 ALJ's failure to account for the testimony of Robbins and his son calls into question the
14 validity of his determination of Robbins's limitations and RFC before September 1998.
15 Because those determinations were flawed, the hypothetical posed to the vocational
16 expert was legally inadequate. Such a failure cannot be deemed harmless because, if
17 the ignored testimony is credited, a proper hypothetical would have included limitations
18 which, the record suggests, would have been determinative as to the vocational expert's
19 recommendation to the ALJ.") (citation omitted). The Court does not find that the
20 ALJ's error was harmless. The Court remands this matter to the Commissioner for
21 further proceedings.

## CONCLUSION

23 IT IS HEREBY ORDERED that: (1) the Report and Recommendation (ECF No.
24 18) is ADOPTED in part and NOT ADOPTED in part. With respect to the ALJ's
25 decision to reject the opinions of Plaintiff's treating psychiatrists, the Report and
26 Recommendation is ADOPTED; otherwise, the Report and Recommendation is NOT
27 ADOPTED. Plaintiff's Motion for Summary Judgment (ECF No. 12) is GRANTED
28 in part, and Defendant's Cross-Motion for Summary Judgment (ECF No. 16) is

1  DENIED. The Court remands this matter to the Commissioner for further proceedings,
2  as discussed in this Order. The Clerk of the Court shall close this case.

DATED: September 30, 2013

**WILLIAM Q. HAYES**
United States District Judge